**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CLIFTON WHITE,**

    **Plaintiff,**

v.                                                                                    No. 1:21-cv-01204-MIS-JFR

**LISA PADILLA,**
New Mexico Correctional Department,
in her individual capacity;
**CATHY CATANACH,**
New Mexico Corrections Department,
in her individual capacity;
**ELIJAH LANGSTON,**
New Mexico Corrections Department,
in his individual capacity;
**JUDITH ANDERSON,**
New Mexico Corrections Department,
in her individual capacity;
**ALISHA TAFOYA LUCERO,**
New Mexico Corrections Department,
in her individual capacity;
**JOE LYTLE,**
New Mexico Corrections Department,
in his individual capacity; and
**MELISSA ORTIZ,**
New Mexico Corrections Department,
in her individual capacity,

    **Defendants.**

## SECOND AMENDED COMPLAINT

Plaintiff Clifton White, by and through the undersigned counsel, Freedman Boyd Hollander Goldberg & Davis P.A. (Frank Davis), Ahmad Assed & Associates, LLC (Britany J. Schaffer), and the American Civil Liberties Union of New Mexico (Leon Howard), hereby brings this Complaint against Defendants Lisa Padilla, Cathy Catanach, Elijah Langston, Judith Anderson, Alisha Tafoya Lucero, Joe Lytle, and Melissa Ortiz. In support of his Complaint, Plaintiff states as follows:

1

## JURISDICTION AND VENUE

1. This action is brought to redress violations of Plaintiff's rights as secured by 42 U.S.C.A. §§ 1983 and 1985 for violations of First, Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States.

2. Jurisdiction and venue are proper pursuant to Article VI, Section 13 of the New Mexico Constitution, and NMSA §§ 38-3-1(A,G).

## PARTIES

3. Plaintiff Clifton White resides in the State of New Mexico.

4. Upon information and belief, Defendant Lisa Padilla resides in the State of New Mexico, and was a Records Manager at Central New Mexico Correctional Facility ("CNMCF") during Mr. White's time at CNMCF in 2014-2015.

5. Defendant Padilla's responsibilities included the preparation of Mr. White's good time figuring sheets.

6. Upon information and belief, Defendant Cathy Catanach resides in the State of New Mexico.

7. Defendant Catanach was the Classification Bureau Chief at the New Mexico Corrections Department ("NMCD") during the time Defendant Padilla prepared and was responsible for the oversight of Mr. White's good time figuring sheets.

8. Upon information and belief, Defendant Elijah Langston resides in the State of New Mexico.

9. Defendant Langston is a Probation and Parole Officer with NMCD. At times relevant to this lawsuit, he was responsible for overseeing Mr. White's probation and parole and had knowledge of the State's wrongful jurisdiction over Mr. White, yet he failed to act.

10. At times relevant to this lawsuit, Defendant Judith Anderson was a Records Manager for NMCD.

11. Upon information and belief, Defendant Anderson resides in the State of New Mexico.

12. At times relevant to this lawsuit, Defendant Anderson was in charge of ensuring that Mr. White's sentence was interpreted correctly and had a duty to elevate any issues with Mr. White's sentences so they could be corrected and so that Mr. White, or any prisoner in his facility, was not being wrongfully detained.

13. At times relevant to this lawsuit, Defendant Alisha Tafoya Lucero was a Deputy Warden for NMCD.

14. Upon information and belief, Defendant Tafoya Lucero resides in the State of New Mexico.

15. At times relevant to this lawsuit, Defendant Tafoya Lucero was in a supervisory position at NMCD with knowledge of Mr. White's wrongful incarceration and she failed to act on this information.

16. At times relevant to this lawsuit, Defendant Joe Lytle was a Deputy Warden for NMCD.

17. Upon information and belief, Defendant Lytle resides in the State of New Mexico.

18. At times relevant to this lawsuit, Defendant Lytle was in a supervisory position at NMCD with knowledge of Mr. White's wrongful incarceration and he failed to act on this information.

19. At times relevant to this lawsuit, Defendant Melissa Ortiz was a Warden and Deputy Director for NMCD.

20. Upon information and belief, Defendant Ortiz resides in the State of New Mexico.

21. At times relevant to this lawsuit, Defendant Ortiz was in a supervisory position at NMCD with knowledge of Mr. White's wrongful incarceration and she failed to act on this information.

**FACTUAL BACKGROUND**

22. This case arises from Defendants' unlawful and retaliatory arrest, confinement, and treatment during confinement of Mr. White.

23. Mr. White's arrest, confinement, and treatment during confinement were retaliatory, unlawful, and in excess of any term of confinement permitted by the laws of the State of New Mexico.

24. Mr. White's arrest, confinement, and treatment during confinement violate the Constitution of the United States of America, the laws that govern the State of New Mexico, and for which redress from this Court is appropriate.

### A. Mr. White's Underlying Criminal Case and the Failing of the Criminal Justice System Created the Opportunity for Mr. White's Unlawful Treatment.

25. On or around May 20, 2002, a grand jury indicted Mr. White with two counts of Armed Robbery, for allegations of conduct occurring on February 22, 2002 and March 4, 2002, when Mr. White had only just turned 18 years old, under cause number D-202-CR-2002-1530.

26. On or around July 7, 2003, a grand jury indicted Mr. White with Kidnapping, Armed Robbery, Trafficking, Aggravated Assault (Deadly Weapon), and Conspiracy charges tied to 20-year-old Walter Greene, as well as Battery and Possession of Marijuana (1 ounce or less), under cause number D-202-CR-2003-2079.

27. On December 17, 2003, Mr. White entered into a plea agreement consolidating both cases, and to which Mr. White pleaded guilty to Armed Robbery, Trafficking, Conspiracy to Commit Armed Robbery, two counts of Aggravated Assault (Deadly Weapon), in connection with the D-202-CR-2003-2079 case, and one count of Armed Robbery in connection with the D-202-CR-2002-1530 case.

28.     Under the plea agreement, the Armed Robbery and Trafficking charges in connection with D-202-CR-2003-2079 were to run concurrently, and all other charges were to run consecutively. The remaining charges were to be dismissed. Mr. White was to serve a period of six years' incarceration, followed by five years' probation. The plea agreement was silent as to the total suspended sentence.

29.     On December 17, 2003, the court held a change of plea hearing, and entered a Judgment and Sentence on February 19, 2004.

30.     The Judgment and Sentence provided that the Armed Robbery and Trafficking charges would run concurrently, and the remaining charges would run consecutively. The court then imposed a term of six years' incarceration, with 19 years suspended.

31.     Mr. White incurred a total of six probation violations between his first release from incarceration on January 9, 2008, and his final incarceration on his sixth probation revocation on December 6, 2017. At least one of the probation revocation dispositions involved parole retakes pursuant to NMSA 1978, Section 31-20-5(B)(2).

32.     Mr. White was also transferred to Arizona during his term of incarceration under the Interstate Compact Agreement, where he remained for 18 months, serving straight time, having been apparently forgotten by NMCD.

33.     During Mr. White's terms of incarceration, he earned various amounts of meritorious deductions, which were calculated based on whether his sentence was associated with Serious Violent or Non-Serious Violent Offenses, as defined in NMSA 1978, Section 33-2-34.

34.     On May 16, 2014, Mr. White filed a Petition for Writ of Habeas Corpus, which resulted in the award of an additional 311 days of Pre-Sentence Confinement credit.

35. It was later determined that Mr. White was also entitled to at least forty-two (42) days of Pre-Sentence Confinement credits from at least May 9, 2002 through June 19, 2002 – for which he never received credit – contrary to the requirements of NMSA 1978, Section 31-20-12.

36. On December 20, 2012, the Court imposed a five-year period of incarceration for a fourth probation violation. The Order Revoking Probation provided that Mr. White would receive "credit for all time served on the original probation."

37. NMCD then mistakenly paroled Mr. White on a one-year parole period on Count 8, for Aggravated Assault (Deadly Weapon), from the D-202-CR-2003-2079 case, beginning on June 5, 2015.

38. However, Mr. White should have been paroled on a two-year parole period for Count 2, for Armed Robbery with a Deadly Weapon, under the D-202-CR-2002-1530 case.

39. Extending the existing Earned Meritorious Deductions (EMD) calculations and accounting for NMSA 1978, Section 31-20-5(B)(2) (Parole Retake During the first term of supervised probation), which added 151 days to Mr. White's initial probation period, and tracking the terms of the sentences for each specific charge relative to Mr. White's terms of incarceration, periods of supervision, and fugitive time, Mr. White should have been discharged of all remaining parole jurisdiction on or about September 6, 2016.

40. Instead, on September 6, 2019, Mr. White was erroneously released on parole three years after the expiration date of September 6, 2016.

41. Mr. White essentially spent his entire adult life in the revolving doors of the criminal justice system, without receiving proper treatment and rehabilitation, for a crime that occurred over fifteen years ago, when he was barely old enough to be prosecuted as an adult.

42.     For instance, instead of being released from the jurisdiction of the State in September of 2016, Mr. White was incarcerated on a probation violation, alleging that he had failed to report to probation, from June 27, 2016 to February 16, 2017.

43.     In fact, a status hearing was held for this alleged probation violation on September 2, 2016, but Mr. White's parole officer failed to raise the fact that his parole term would end four days later.

44.     Mr. White was incarcerated for portions of 2017 and 2018 on probation violations. During this timeframe, Mr. White was incarcerated at Penitentiary of New Mexico in Santa Fe where Defendant Alisha Tafoya Lucero was a Deputy Warden and Defendant Joe Lytle was also a Deputy Warden, in Southern New Mexico Correctional Facility where Defendant Melissa Ortiz was the Warden (later she became Deputy Director of NMCD), and in Northwestern Correctional Facility in Grants where Defendant Judith Anderson was the Records Manager.

45.     Also, during this timeframe, Mr. White had meetings with Defendants Tafoya Lucero, Lytle, and Ortiz, where they acknowledged they reviewed Mr. White's good time figuring sheets and sentence, and acknowledged that there was a problem with his sentence and that he should not be under the jurisdiction of the State.

46.     Nevertheless, despite their knowledge of Mr. White's wrongful incarceration, Defendants Tafoya Lucero, Lytle, and Ortiz failed to act and left Mr. White incarcerated.

47.     Lastly, during this timeframe, particularly when Mr. White was wrongfully incarcerated in Northwestern Correctional Facility, Defendant Anderson was the records custodian and in charge of ensuring Mr. White's good time and sentence were being calculated correctly. Defendant Anderson failed to take any actions despite the fact the State did not have jurisdiction over Mr. White as of September 6, 2016.

### B. Mr. White's Experience with Wrongful Parole and Probation

48. Mr. White had been on and off either probation or parole most of his adult life following his first term of probation in January 2008 through his final release in September 2020. Many of the violations he incurred were either technical violations or related to untreated substance abuse issues.

49. As an example, when he first began community organizing, his probation officer filed a violation report for a beer bottle cap that was found in Mr. White's front yard.

50. On September 13, 2017, Mr. White's probation officer filed an identical probation violation report to the April 5, 2016 for failing "to report to probation authorities as instructed."

51. On December 8, 2017, the court remanded Mr. White to the Department of Corrections for a period of two years beginning on December 6, 2017, and unsatisfactorily discharged him from probation upon his release. His parole term was unspecified, but to be served "as provided by law."[1]

52. Mr. White did not receive credit for the time that he spent waiting for his probation violation hearing between September 13, 2017 to December 8, 2017.

53. After Mr. White's sixth violation and termination of probation on December 8, 2017, he filed a writ of habeas corpus in which he informed the court of the issue as to over-serving his sentence, which was denied. He also filed a notice of appeal, which was denied.

---

[1] Under NMSA 1978, Section 31-21-10(D), "an inmate who was convicted of a first, second, or third degree felony and who has served the sentence of imprisonment imposed by the court in an institution designated by the corrections department shall be required to undergo a two-year period of parole."

8

54. Mr. White was released from detention and erroneously placed on parole in September 2019, after spending two years incarcerated from the time of his probation violation. He did not receive EMD credits for the time that he served during that period of incarceration.

55. Upon information and belief, his parole officer, Defendant Elijah Langston, was cognizant that Mr. White had been placed back on parole after his jurisdiction had expired.

56. Indeed, while Mr. White was illegally under supervision on parole, he incurred a number of minor infractions, which were never filed or otherwise disposed of, mostly including legal conduct for non-parolees such as possessing alcohol, traveling outside Bernalillo County, associating with inmates, and violating a 9:00 p.m. curfew.

57. Defendant Langston had even approved extending Mr. White's curfew past 9:00 p.m. to accommodate a job he had and knew that Mr. White was regularly working past his curfew.

58. Mr. White's probation officer, Defendant Langston, was also aware of the alleged violations well before the incident that occurred with APD on May 28, 2020.

59. In fact, Mr. White had met with Defendant Langston on or about May 31, 2020, after these alleged incidents occurred, and not only did Defendant Langston not inform him of any pending violations, but he indicated that his parole term was going well.

60. Defendant Langston was aware that Mr. White was wrongfully under the jurisdiction of the State through several conversations with Mr. White, in addition to reviewing the history of Mr. White's underlying charges and sentence, and he failed to act or elevate despite his knowledge of the State's unconstitutional control over Mr. White's liberty.

### C. Mr. White's Last Wrongful Arrest and Detention

61. On June 1, 2020, Officer Geoffrey Stone requested that APD's ISU detectives "locate and apprehend a wanted fugitive, Clifton White, who had a felony warrant for his arrest for a parole violation."

62. APD officers Sergeant Eric Brown, Geoffrey Stone, and other unknown officers then conspired to follow Mr. White into a liquor store in plain clothes. They put on their police vests once he entered the liquor store and arrested him at the counter for a purported parole violation, having no authority or jurisdiction to do so.

63. Mr. White was then booked into Metropolitan Detention Center and placed in solitary confinement in Segregation 4.

64. On the day that Mr. White was booked into custody, Deputy Chief Aaron Vigil responded to a question from a fellow officer as to whether he knew anything about Mr. White protesting the death of Vicente Villela, an inmate at Metropolitan Detention Center who died while being restrained by corrections officers, "No[,] But the Girl that protested and her Boyfriend got arrested[.] And her Nigg Boyfriend is still in jail[.] She is claiming it[] was violated because he is black[.] And I would not doubt they will bring up the losers Brandon killed." The officer responded, "Yeah I heard about that inmate. He's mad because he got violated for protesting."

65. Mr. White was subjected to other forms of abuse and retaliation while he was incarcerated at Metropolitan Detention Center, before being transferred to Central New Mexico Correctional Facility (CNMCF) on June 4, 2020 and held in segregation for 14 days. He was later held at the Guadalupe County Correctional Facility (GCCF) until his final release from his wrongful probation, parole, and detention on October 28, 2020.

66. On October 27, 2020, the Second Judicial District Court for the State of New Mexico (Second District Court) entered an Order Discharging Mr. White from incarceration, because it deemed that the State had no jurisdiction over him based on the underlying criminal case for which the State claimed to have him incarcerated. See "Order Discharging Defendant" attached hereto as Exhibit 1.

67. The Second District Court found that Mr. White should have been released from the custody of the State on or about September 6, 2016.

68. Thus, Mr. White was unlawfully kept under the jurisdiction of the state either by incarceration, parole, or probation from September 7, 2016 until the Second District Court entered its order on October 27, 2020. Mr. White brings this complaint for damages as a result of the Defendants' actions, which resulted in the wrongful restriction of his liberty from September 7, 2016 to October 28, 2020. The wrongful restriction on his liberty caused severe mental distress, loss of enjoyment of life, and irreparable emotional trauma.

COUNT I: FOURTH AMENDMENT
WRONGFUL DETENTION/FALSE IMPRISONMENT
(All Defendants)

69. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

70. As set forth herein, Defendants, after the State's jurisdiction over him had expired, intentionally kept Mr. White on parole and probation, took Mr. White into custody, and/or held Mr. White in custody.

71. Defendants' detention of Mr. White confined or restrained Mr. White without Mr. White's consent.

72. As set forth herein, Defendants knew or should have known that they had no lawful authority to confine, restrain, or keep Mr. White in custody without his consent.

73. Defendants were reckless and/or deliberately indifferent concerning the computation of Plaintiff's sentence, which led to Plaintiff's wrongful probation and parole and re-incarceration, and/or were reckless and/or deliberately indifferent when they failed to look into Plaintiff's complaints that he was being wrongfully incarcerated.

74. As a direct and proximate result of Defendants' conduct, Mr. White has suffered substantial damages in an amount to be proven at trial.

### COUNT II: FOURTEENTH AMENDMENT DUE PROCESS VIOLATION (DEPRIVATION OF LIBERTY)
(All Defendants)

75. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

76. Plaintiff has a Fifth Amendment right to be free from deprivation of liberty without due process of law.

77. Defendants violated Plaintiff's due process rights when they kept him on probation, parole, and/or in detention and continually ignored his complaints that he had already served the mandatory time for his sentence. Plaintiff was not provided an opportunity to be heard regarding his protests.

78. In taking the actions and omissions described above, Defendants violated Plaintiff's right to be free from deprivation of liberty without due process of law.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff Clifton White prays for a judgment against the defendants as follows:

1.     Awarding damages, jointly and severally against all defendants, in an amount that the jury determines sufficient to compensate Plaintiff for the constitutional deprivations inflicted by Defendants and the corresponding damages that flow from those violations;

2.     Awarding damages against the defendants in an amount that the jury determines sufficient to compensate Plaintiff for Defendants' tortious conduct;

3.     Awarding punitive damages against the defendants in an amount the jury determines is sufficient to deter Defendants and others from acting in a reckless and callous disregard of, or indifference to, the rights and safety of Plaintiff and others;

4.     Awarding reasonable costs and attorney's fees incurred in bringing this action pursuant to 42 U.S.C. § 1988, to be paid by Defendants; and

5.     Granting such other and further relief as the Court deems just and proper.

Respectfully submitted by:

*/s/ Leon Howard*
Leon Howard
ACLU OF NEW MEXICO
P.O. Box 566
Albuquerque, NM 87103
T: (505) 266-5915
F: (505) 266-5916
lhoward@aclu-nm.org

Cooperating Attorney for
American Civil Liberties Union
of New Mexico Foundation:

Britany Schaffer
LAW OFFICE OF AHMAD ASSED
AND ASSOCIATES
818 5th St. NW
Albuquerque, NM 87102
T: (505) 246-8373
britany@assedlaw.com

<u>Cooperating Attorney for
American Civil Liberties Union
of New Mexico Foundation:</u>

Frank T. Davis
FREEDMAN BOYD HOLLANDER
GOLDBERG & DAVIS, P.A
20 First Plaza Center NW
Suite 700
Albuquerque, NM 87102
T: (505) 842-9960
ftd@fbdlaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 2nd day of February, 2022, I filed the foregoing via the CM/ECF electronic filing system, causing a copy of the same to be served on all counsel of record.

*/s/ Leon Howard*
Leon Howard