## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CLIFTON WHITE,**

> **Plaintiff,**

> **v.**                                                                                    **Civ. No. 21-1204 MIS/JFR**

**LISA PADILLA,** *New Mexico Correctional Department*,
*in her individual capacity*, **et al.,**

> **Defendants.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 46. On May 20, 2022, Defendants filed a *Motion for Judgment on the Pleadings* ("Motion"). Doc. 32. On July 12, 2022, Plaintiff filed a *Response in Support of the Denial of the Defendants' Motion for Judgment on the Pleadings and, in the Alternative, Request for Limited Discovery in Order to Adequately Respond*. Doc. 40. On August 17, 2022, Defendants filed a *Reply in Support of Defendants' Motion for Judgment on the Pleadings*. Doc. 44. Defendants informed the Court that briefing is complete on the Motion. Doc. 45. Thus, it is ripe for decision. *See* D.N.M.LR-Civ. 7.1(e). Discovery in this matter has been stayed pending resolution of the Motion. Doc. 35. Having reviewed the pleadings and the applicable law, and being otherwise sufficiently advised, the Court recommends that the presiding judge **GRANT** Defendants' Motion **IN PART** and **DENY** Defendants' Motion **IN PART**.

---

[1]        By Order of Reference filed October 12, 2022, the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition. Doc. 46.

## LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

"Failure to state a claim upon which relief can be granted" is a defense that "may be raised . . . by motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Rule 12(c) provides: "After pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "'Pleadings are closed within the meaning of Rule 12(c) if no counter or cross claims are at issue when a complaint and an answer have been filed.'" *Bath v. Am. Express Co.*, No. 19-CV-606, 2019 WL 2607020, at *4 (D. Colo. May 31, 2019) (quoting *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 60 (D.D.C. 2007)); *see also* Fed. R. Civ. P. 7(a) (setting out the "pleadings . . . allowed" in civil litigation). Motions brought under Rule 12(c) are subject to the same standards applicable to motions to dismiss brought under Rule 12(b)(6), "failure to state a claim upon which relief can be granted." *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).

"The nature of Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint need not set forth detailed factual allegations, yet a 'pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action' is insufficient." *Romero v. Bd. of Cnty. Comm'rs*, 202 F. Supp. 3d 1223, 1240 (D.N.M. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim for relief that is plausible on its face." *Id.* A "plausible" claim for relief is not one that is "likely to be true." *Robbins v.*

*Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted).  "Rather, plausibility in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," the claim for relief has not crossed "the line from conceivable to plausible."  *Id.* (internal quotation marks and citation omitted).  "The allegations must be enough that . . . the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.*

In ruling on motion brought under Rule 12(c), however, the Court is not constrained to considering the well-pled allegations set forth within the four corners of the complaint, but considers materials attached to the pleadings, and the answer.  *See Park Univ. Enters., Inc., v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds as stated in Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013); *Ciber, Inc. v. ACE Am. Ins. Co.*, 261 F. Supp. 3d 1119, 1125 (D. Colo. 2017).   The Court will "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  *Park Univ. Enters.*, 442 F.3d at 1244.   Indeed, "[a]ll of the nonmoving party's allegations are deemed to be true, and all of the movant's contrary assertions are taken to be false."  *Romero*, 202 F. Supp. 3d at 1240 (citing *Nat'l Metro. Bank v. United States*, 323 U.S. 454, 456-57 (1945)).  "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Park Univ. Enters.*, 442 F.3d at 1244 (internal quotation mark and citation omitted).  "Claims dismissed pursuant to a motion under [R]ule 12(c) are dismissed with prejudice."  *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015).

## FACTUAL AND PROCEDRUAL BACKGROUND

The facts are taken from Plaintiff's Second Amended Complaint (Doc. 16) and accepted as true for purposes of Defendants' Motion.  *See Park Univ. Enters.*, 442 F.3d at 1244.

In May 2002, a grand jury sitting in the Second Judicial District Court of Bernalillo County, New Mexico, indicted Plaintiff in Case No. D-202-CR-2002-1530 for two counts of armed robbery, alleged to have occurred earlier that year.  Doc. 16 at 4.  Fourteen months later, a grand jury sitting in the Second Judicial District Court of Bernalillo County, New Mexico, indicted Plaintiff in Case No. D-202-CR-2003-2079 for kidnapping, armed robbery, trafficking, aggravated assault with a deadly weapon, conspiracy, battery, and possession of marijuana.  *Id.* Plaintiff entered into a consolidated plea agreement to resolve both cases, under which he pled guilty to one count of armed robbery in Case No. D-202-CR-2002-1530, and armed robbery, trafficking, conspiracy to commit armed robbery, and two counts of aggravated assault with a deadly weapon in Case No. D-202-CR-2003-2079.  *Id.*  With regard to sentencing, the terms of the plea agreement called for Plaintiff to serve his sentence for the armed robbery and trafficking convictions in D-202-CR-2003-2079 concurrently, while his sentence for all other convictions was to be served consecutively, for a period of six years of incarceration, followed by a five-year term of probation.  *Id.* at 5.  The state district court's Judgment and Sentence suspended a total of 19 years of incarceration.  *Id.*

Plaintiff was released from custody on January 9, 2008.  *Id.*  A year and a half of Plaintiff's time incarcerated was spent in custody in Arizona, pursuant to the Interstate Compact Agreement.  *Id.*  Plaintiff served this period of time straight through, apparently without the application of meritorious deductions.  *Id.*  Plaintiff earned meritorious deductions during his time in custody, and he was awarded 311 days of pre-sentence confinement credit following a

successful petition for a writ of habeas corpus. *Id.* At some point, it was also determined that Plaintiff was entitled to an additional 42 days of pre-sentence confinement credit. *Id.* at 6.

Plaintiff violated the terms of his probation six times between the date of his initial release from custody and the date of his final probation revocation. *Id.* at 5. On December 20, 2012, Plaintiff was ordered to spend five years in custody as a result of his fourth violation of the terms of his probation. *Id.* at 6. The state district court's order revoking probation provided that Plaintiff was entitled to "credit for all time served on the original probation." *Id.* (internal quotation marks omitted). On June 5, 2015, the New Mexico Department of Corrections ("DOC") paroled Plaintiff for a one-year term of parole for one of his convictions for aggravated assault with a deadly weapon in Case No. D-202-CR-2003-2079. *Id.* However, Plaintiff was supposed to be paroled for a two-year term of parole for his armed robbery conviction in Case No. D-202-CR-2002-1530. *Id.* Plaintiff was released onto parole on September 16, 2019.[2] *Id.* However, this was done in error; had the state's jurisdiction over Plaintiff been calculated correctly, he would have been released from parole three years earlier, on September 6, 2016. *Id.*

At different times in 2017 and 2018, Plaintiff was in the custody of DOC because of violations of the terms of his probation. *Id.* at 7. For example, in December 2017, the state district court remanded Plaintiff to DOC's custody for two years for violating the terms of his probation for a sixth time, with an unsatisfactory discharge from probation at the time of his release. *Id.* at 8. Plaintiff was in custody awaiting a hearing on this probation violation between

---

[2]     In Plaintiff's Second Amended Complaint, he lists this date as September 6, 2019. Doc. 16 at 6. However, he appears to list this date as both September 6, 2019, and September 16, 2019, in his response to the Motion. Doc. 40 at 24-25. The district court, in its stipulated order directing Plaintiff's release from the state's jurisdiction, listed this date as September 16, 2019. Doc. 16-1 at 2. September 16, 2019 is also the date listed in the motion giving rise to the district court's stipulated order (Doc. 32-1 at 3), and Defendants use this date in their Motion (Doc. 32 at 2). If there is a distinction between these two dates, it is unclear from the pleadings and immaterial to the Court's analysis.

September 13, 2017, and December 8, 2017, but did not receive credit for serving this time. *Id.*

Plaintiff sought a writ of habeas corpus following his December 2017 probation revocation and it

was denied. *Id.* at 8.

Defendants were employed by DOC. *Id.* at 2-3, 7. Plaintiff met with Defendants Alisha

Tafoya Lucero, Joe Lytle, and Melissa Ortiz (collectively, "Warden Defendants"), who

acknowledged issues with the calculation of the amount of time Plaintiff should remain in

custody, but the issues went unremedied by these Defendants. *Id.* at 7. The issues also went

unremedied by Defendant Judith Anderson, whose job duties included maintaining records[3] of

the calculation of inmate sentences and meritorious deductions. *Id.*

At the time of Plaintiff's release onto parole in September 2019, Defendant Elijah

Langston was Plaintiff's parole officer. *Id.* at 9. Defendant Langston had reviewed Plaintiff's

convictions and sentence and Plaintiff informed him that the state's parole jurisdiction over him

had expired, but Defendant Langston nonetheless continued to supervise Plaintiff as a parolee.

*Id.* On May 28, 2020, Plaintiff was involved in an incident with the Albuquerque Police

Department ("APD"). *Id.* On May 31, 2020, Plaintiff and Defendant Langston had a meeting,

and Defendant Langston did not inform Plaintiff of any parole violations. *Id.*

On June 1, 2020, Plaintiff was arrested in a liquor store by APD on a felony warrant for a

violation of his terms of parole. *Id.* at 10. Plaintiff was booked into the Metropolitan Detention

Center ("MDC"). *Id.* On that date, two MDC Officers engaged in an exchange about whether

Plaintiff participated in a protest regarding a former inmate at MDC, who died during his

restraint by MDC Officers. *Id.* The exchange included racist language. *Id.* On June 4, 2020,

---

[3]      Plaintiff alleges two other DOC employees bore responsibility for preparing and maintaining records of
sentence calculations, Defendants Lisa Padilla and Cathy Catanach. Doc. 16 at 2. Defendants Anderson, Padilla, and
Catanach are collectively referred to as "Records Defendants."

Plaintiff was transferred to the custody of DOC, where he remained until his ultimate release from probation, parole, and incarceration.  *Id.*  The state district court entered a stipulated order on October 27, 2020, finding that the state's jurisdiction over Plaintiff expired on September 6, 2016, and ordering Plaintiff's immediate release from the custody.  *Id.* at 11.

Plaintiff filed a complaint against Defendants[4] in the First Judicial District Court of Santa Fe County, New Mexico on November 19, 2021, based on the events alleged above.  Doc. 1. Defendants removed the action to federal court on December 20, 2021, invoking the original jurisdiction of this Court.  *Id.* at 3.  Plaintiff filed his Second Amended Complaint on February 2, 2022, and Defendants answered on March 11, 2022.  Docs. 16, 22.  In his Second Amended Complaint, Plaintiff brings two causes of action against all Defendants in their individual capacities by way of 42 U.S.C. §§ 1983, 1985: (1) Wrongful Detention/False Imprisonment in violation of the Fourth Amendment; and (2) Violation of Due Process (Deprivation of Liberty) in violation of the Fourteenth Amendment.  Doc. 16 at 2, 11-12.

## ANALYSIS

### I.     Defendants' Motion

Broadly, Defendants argue that Plaintiff has not pled claims for which relief can be granted because they are entitled to qualified immunity.  Doc. 32 at 1, 3, 11-24.  Defendants also maintain that Plaintiff's allegations are "largely conclusory" and lack sufficient specificity, particularly with respect to causation.  *Id.* at 10-11, 18-19.  According to Defendants, Plaintiff does not plead a claim for relief premised on a right that is clearly established by law.  *Id.* at 14. As to Plaintiff's Fourteenth Amendment claim, Defendants contend that the only process due Plaintiff was the judicial proceedings for his probation violations in state district court, during

---

[4]        Defendant Anderson was identified as "JJ Herrera" in the original complaint.  Doc. 1 at 1; *see* Doc. 13 at 1 (seeking leave to file the Second Amended Complaint to correct, *inter alia*, the name of Defendant Anderson).

which he had opportunity to be heard. *Id.* at 15.  Defendants further argue that the wrongful

actions in this case are entirely attributable to the state district court judges who imposed terms

of probation, parole, and incarceration. *Id.* at 15-16.  As to Plaintiff's Fourth Amendment claim,

Defendants argue that Plaintiff's incarceration was not wrongful because it was for "cause," i.e.,

violations of the terms of his probation. *Id.* at 16.  Defendants further argue that, during the time

period at issue, they were bound to act under the orders of the state district court, which directed

them to exercise jurisdiction over Plaintiff, and while those orders were later deemed flawed,

they were valid at the time Defendants acted. *Id.* at 16-17.  Defendants also contend that

Plaintiff is collaterally estopped from litigating the issue of the state's continual exercise of

jurisdiction over him after that jurisdiction had expired, because that issue was decided in his

probation revocation and habeas corpus proceedings and should thus be given preclusive effect.

*Id.* at 18.  Conversely, according to Defendants, the state district court's stipulated order

directing Plaintiff's immediate release from custody is not preclusive against them as they were

not parties to Plaintiff's criminal case, and therefore Plaintiff's claims against them here were not

actually adjudicated. *Id.*  Finally, Defendants maintain that the statute of limitations applicable

to Plaintiff's claims—three years—insulates at least some of them[5] from suit and bars any

recovery by Plaintiff, as they believe the statute began to run on September 22, 2016, because

there was an "existing dispute" between Plaintiff and the state regarding the calculation of his

sentence at that time. *Id.* at 20-22.

## II.     Plaintiff's Response

Plaintiff responds to Defendants' Motion by arguing that both his Fourth Amendment

Claim for wrongful detention and false imprisonment and his Fourteenth Amendment Due

---

[5]      Defendants develop arguments concerning the statute of limitations only as it may apply to Warden Defendants and Records Defendants. *See* Doc. 32 at 20-22.  The Court's analysis of this issue is limited accordingly.

Process Claim for deprivation of liberty are within the gamut of clearly established rights. Doc. 40 at 9-13. He further asserts that Defendants acted recklessly or with deliberate indifference to his harms. *Id.* Specifically, Plaintiff contends that the body of applicable law makes plain that Defendants' actions were wrongful. *Id.* at 9. With respect to his Fourteenth Amendment claim, Plaintiff argues that Defendants' failure to act on knowledge of Plaintiff's wrongful incarceration deprived him of due process of law. *Id.* at 17. With respect to his Fourth Amendment claim, Plaintiff argues that all of the requisite elements of false imprisonment are satisfied in this case. *Id.* at 13-14. In support of these arguments, Plaintiff highlights the "lack of a valid order of confinement" to justify his incarceration by Defendants and his complaints regarding the same which went unanswered by Defendants. *Id.* at 15, 17-18. Plaintiff further argues that Defendants are collaterally estopped from asserting that Plaintiff was serving a valid sentence while in their custody, based upon the stipulated order entered by the state district court finding that the state's jurisdiction over him expired on September 6, 2016. *Id.* at 19-23. Plaintiff maintains that the three-year statute of limitations did not begin to run until September 16, 2019, when he began a term of parole though the state had no jurisdiction over him, or between June 4, 2020, and October 28, 2020, when he spent time in custody for a parole violation though he should not have been on parole in the first instance. *Id.* at 25. Plaintiff bases this assertion on the continuing violation doctrine and the repeated violation doctrine, both of which he argues are applicable here. *Id.* at 25-26. Finally, Plaintiff urges the Court to permit him to obtain additional discovery before entering a ruling on the Motion in favor of Defendants. *Id.* at 18-19.

### III.   Defendants' Reply

In their reply, Defendants contend that the authority Plaintiff relies upon to demonstrate that the rights he claims were violated were clearly established is distinguishable from the facts

of this case or otherwise inapposite.  Doc. 44 at 1-7.  Defendants also argue that, while Plaintiff

has claimed that Defendants acted recklessly or with deliberate indifference to his harms, (Doc.

40 at 9-13), he is barred from making this assertion because, in the state district court's stipulated

order directing his release and the stipulated motion requesting the same, the issues surrounding

the calculation of Plaintiff's sentence are referred to as "'oversights,'" and the actions of DOC

"'mistakenly'" taken.  Doc. 44 at 9 (quoting Docs. 16-1 at 1; 32-1 at 2).  This, according to

Defendants, is fatal to Plaintiff's claims, as he is barred from pleading a necessary element to

sustain them.  Doc. 44 at 9-10.  Defendants further argue that the Plaintiff's arguments regarding

the preclusive effect of the state district court's stipulated order are flawed.  *Id.* at 10-11.

Defendants rest their position in this regard on three assertions.  First, they argue that because the

state district court's stipulated order necessarily was uncontested by the prosecution, it is not a

true adjudication of the issues it addresses, and thus lacks preclusive effect.  *Id.* at 10.  Second,

they argue that they lack privity with the Bernalillo County District Attorney, who was the only

other party to Plaintiff's criminal proceedings in the state district court, and, accordingly, he did

not represent Defendants' interests in those proceedings.  *See id.*  And third, Defendants attempt

to reinforce their position that they were bound to act under the orders of the state district court,

which directed them to exercise jurisdiction over Plaintiff, by arguing that the state district court

never formally overruled those prior orders.  *Id.* at 11.  Finally, Defendants resist Plaintiff's

request for additional discovery.  *Id.* at 11-12.

IV.   **Legal Framework**

   A.   *Statute of Limitations*

   "The statute of limitations is an affirmative defense that must be raised by the defendant."

*Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).  While it is generally advisable

to require factual development before dismissing a case on the statute of limitations, the "defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.* (internal quotation marks and citation omitted).  Congress did not include a statute of limitations for § 1983 claims.  *Arnold v. Duchesne Cty.*, 26 F.3d 982, 984 (10th Cir. 1994).  This leaves the Court with two questions: (i) What is the statute of limitations applicable to Plaintiff's claims?; and (ii) When did his claims accrue?

While "the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles," federal "courts look to state law for the length of the limitations period."  *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).  In New Mexico, the statute of limitations for § 1983 claims is that which is applicable to personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 265 (1985), *superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-381 (2004).  N.M. Stat. Ann. § 37-1-8 states: "Actions must be brought . . . for an injury to the person . . . within three years."  As for accrual, "no federal statutory provision governs how to determine the accrual date," so federal "courts look to federal rules conforming in general to common-law tort principles."  *Herrera*, 32 F.4th at 990 (internal quotation marks and citation omitted).  Common-law tort principles dictate "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (alteration, internal quotation marks, and citations omitted).  Where the parties do not dispute the operative dates of the relevant acts as supplied in the complaint, the accrual date is a legal question that may be answered in the resolution of a motion to dismiss.  *Herrera*, 32 F.4th

at 991.  A principle of equity, the continuing violation doctrine, and a variation of this doctrine, the repeated violation doctrine, are available to plaintiffs bringing § 1983 claims.  *Id.* at 992-93.

i.   The Continuing Violation Doctrine

The continuing violation doctrine is applicable "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act."  *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019) (internal quotation marks and citations omitted).  "Stated differently, one violation continues when the conduct as a whole can be considered as a single course of conduct."  *Id.* (internal quotation marks and citations omitted).  However, the doctrine contains a consequential proviso; it can be invoked only in situations where unlawful acts occurred continually, and not where the plaintiff suffered the lingering negative outcomes of the original wrong.  *Id.* at 1099.

ii.   The Repeated Violation Doctrine

"The repeated violation doctrine is a variation on the continuing violation doctrine."  *Herrera*, 32 F.4th at 995.

> Unlike the continuing violation doctrine, the repeated violations doctrine *divides* what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit.  That division, in turn, allows recovery for only that part of the injury the plaintiff suffered during the limitations period; recovery for the part of the injury suffered outside of the limitations period, however, remains unavailable.

*Hamer*, 924 F.3d at 1100 (internal quotation marks and citations omitted).  "To invoke the repeated violations doctrine, a plaintiff must identify a discrete act occurring within the statute of limitations period and not just the continuing effect of, or continuing harm from, a discrete act that occurred outside the limitations period."  *Herrera*, 32 F.4th at 995.  In sum, "under the

12

repeated violation doctrine, each new violation restarts the statute of limitations, but damages are available only for the violations occurring within that limitations period." *Id.*

  B.  *Qualified Immunity*

  "The qualified-immunity doctrine protects public employees from both liability and from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10ᵗʰ Cir. 2019) (internal quotation marks and citation omitted). "When a defendant raises a qualified-immunity defense, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (emphasis, internal quotation marks, and citations omitted). According to the Supreme Court, lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). "Ordinarily, a plaintiff may satisfy this clearly-established-law standard by identifying an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cummings*, 913 F.3d at 1239 (alterations, internal quotation marks, and citations omitted). A decision need not be "directly on point, but existing precedent must have placed the statutory or constitutional question regarding the illegality of the defendant's conduct beyond debate." *Id.* (alteration, internal quotation marks, and citation omitted). "Once the plaintiff has established the inference

that the defendant's conduct violated a clearly established constitutional right, a qualified-immunity defense generally fails." *Romero*, 202 F. Supp. 3d at 1242 (citing *Cannon v. City & Cty. of Denver*, 998 F.3d 867, 870-71 (10th Cir. 1993)).

      C.     *Procedural Due Process*

"No State shall . . . deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV. "The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due process rights were violated: (i) Did the individual possess a protected property or liberty interest to which due process was applicable?; and (ii) Was the individual afforded the appropriate level of process?" *Romero*, 202 F. Supp. 3d at 1242 (alteration, internal quotation marks, and citation omitted). "The range of interests protected by procedural due process is not infinite." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (alteration, internal quotation marks, and citation omitted). "Due process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment. And to determine whether due process requirements apply in the first place, we must look not to the weight but to the nature of the interest at stake." *Id.* (internal quotation marks and citation omitted). "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972). Among an individual's liberty interests is "freedom from bodily restraint and punishment. It is fundamental that the [S]tate cannot hold and physically punish an individual except in accordance with due process of law." *Ingraham*, 430 U.S. at 673-74 (citation omitted); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (observing that there is a "substantial liberty interest in not being confined unnecessarily" (internal quotation marks and citation omitted)).

14

D.      *Liability for Constitutional Violations*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for employees' tortious acts," *Romero*, 202 F. Supp. 3d at 1251, but "anyone who causes any citizen to be subjected to a constitutional deprivation is also liable," *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (alteration, internal quotation marks and citation omitted).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49.  For an action to be taken under color of state law, the conduct giving rise to the alleged constitutional deprivation must properly be attributable to the State.  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).  To show an action was taken under color of state law, "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).  "A real nexus" is not readily defined and turns on the circumstances of the case at hand.  *Romero*, 202 F. Supp. 3d at 1252.

15

E.      *Collateral Estoppel*

"Collateral estoppel means simply that when an issue of ultimate facts has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Guttman v. Khalsa*, 669 F.3d 1101, 1109 (10th Cir. 2012) (internal quotation marks and citation omitted).  Judgments rendered upon matters in issue in state court criminal proceedings may collaterally preclude their litigation again in civil suits brought pursuant to § 1983.  *Allen v. McCurry*, 449 U.S. 90, 103-104 (1980).  "The federal court must apply the state collateral estoppel rules when determining whether a prior state court judgment bars litigation of an issue in a § 1983 claim." *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992).  In New Mexico,

> application of collateral estoppel generally requires that (1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined.

*City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 10, 134 N.M. 216, 75 P.3d 816.  Even if the party seeking to use collateral estoppel demonstrates that every element of this test is met, the Court must still "determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Shovelin v. Cent. NM Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996.  This determination lies within the Court's discretion.  *Id.*  However, the party resisting collateral estoppel should "raise the fairness issue" because they "would ordinarily be in the better position to know if there were grounds showing unfairness." *DeLisle v. Avallone*, 1994-NMCA-012, ¶ 16, 117 N.M. 602, 874 P.2d 1266.

**V.**     **Plaintiff Does Not Plead a Viable Fourth Amendment Claim**

In his Fourth Amendment Wrongful Incarceration/False Imprisonment claim, Plaintiff

alleges that Defendants falsely imprisoned him by keeping him in their custody without his

consent though the state no longer had jurisdiction over him.  Doc. 16 at 11-12.  The Court

concludes that Plaintiff's false imprisonment claim is misplaced; that is, a claim brought under §

1983 in this context is properly brought under the Fourteenth Amendment's due process clause

rather than the Fourth Amendment's seizure provision.

False imprisonment is generally a state law tort claim.  Here, Plaintiff has brought only

federal claims.  Doc. 16 at 2.  An individual may claim false imprisonment, however, as an

unreasonable seizure that violates the right against such seizures secured by the Fourth

Amendment.  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  Indeed, an

individual's "initial seizure is governed by the Fourth Amendment, but at some point after arrest,

and certainly by the time of trial, [the] constitutional analysis shifts to the Due Process Clause"

of the Fourteenth Amendment.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004)

(citation omitted)

Plaintiff necessarily does not claim unreasonable seizure in his Second Amended

Complaint, as he is not alleging that he was unlawfully arrested and spent time in custody before

receiving legal process.  Instead, his claim stems from the state's exercise of jurisdiction over

him after his sentence stemming from his convictions had expired.  As the Tenth Circuit has

explained,

> two claims arise from an allegedly unconstitutional imprisonment as analysis shifts
> from the Fourth Amendment to the Due Process Clause.  The period of time
> between an unlawful arrest and the institution of legal process forms one
> constitutional claim, arising under the Fourth Amendment.  That claim accrues
> when the plaintiff is released or legal process is instituted justifying that
> imprisonment.  The period of time between the institution of that process and its

> favorable termination—through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause.  That claim accrues, at the earliest, when favorable termination occurs.

*Mondragon*, 519 F.3d at 1083 (internal quotation marks and citation omitted).   More precisely, if an individual

> has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment.  If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.

*Id.* at 1082; *see also Turner v. Troutwein*, No. 07-CV-624, 2008 WL 2077938, at *1-2 (D. Or. May 14, 2008) ("[The] plaintiff does not allege false imprisonment as unlawful seizure, because he does not challenge his initial detention for a post-prison supervision violation.  Rather, he contends that his detention extended beyond the expiration of his sentence.  Therefore, [the] plaintiff must allege a violation of his due process rights in order to state a claim under federal law." (citation omitted)).  According to the Supreme Court,

> [i]f there is a false arrest [or false imprisonment] claim, damages for that claim cover the time of detention up until issuance of process of arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

*Wallace v. Kato*, 549 U.S. 384, 390 (2007) (internal quotation marks and citation omitted).  The Supreme Court went on to explain that, an individual's false imprisonment does not end "upon his release from custody," but ceases "when legal process [is] initiated against him."  *Id.* Accordingly, the Tenth Circuit "has held that the Constitution permits due process claims for wrongful imprisonment after the wrongful institution of process."  *Mondragon*, 519 F.3d at 1083.

As stated above, Plaintiff's Fourth Amendment claim does not arise from an *absence* of process.  In fact, it cannot be argued that Plaintiff received no process, a necessary component of

18

a Fourth Amendment claim brought pursuant to § 1983. *See id.* at 1082. As Defendants note, the state's exercise of jurisdiction over Defendant stemmed from orders entered by the state district court that sentenced him. Doc. 32 at 17. Rather, Plaintiff challenges the actions, or inactions, of Defendants who knew that the state's jurisdiction over Plaintiff had expired but continued to act as though it had not. The Court understands that a plaintiff need not satisfy the requirements of an analogous common law tort to successfully plead a claim under § 1983. *Pierce*, 359 F.3d at 1290. However, in this case, it has been established that false imprisonment under the Fourth Amendment is not an analogous common law tort that is available to Plaintiff, given the facts pled in the Second Amended Complaint that are rooted solely in Defendants' role in continuing to subject him to the state's jurisdiction that had expired. *See Mondragon*, 519 F.3d at 1082-83. As already explained, Plaintiff premises his claim on the *entirety* of time he was subjected to the state's expired jurisdiction as opposed to a discrete amount time where he was detained prior to receiving legal process. Thus, on the facts alleged, the Fourth Amendment is not at play, *see id.* at 1082, and, as to this claim, Plaintiff has not alleged violations of any other constitutional provision to sustain a claim under §1983.

For these reasons, the Court recommends that the presiding judge dismiss Plaintiff's Fourth Amendment claim with prejudice on the grounds that he has failed to plead a claim upon which relief can be granted. Accordingly, the Court's remaining analysis is limited to his Fourteenth Amendment claim.

## VI.   Plaintiff's Fourteenth Amendment Claim is Not Foreclosed by the Statute of Limitations

The parties dispute the accrual date for Plaintiff's claim. According to Defendants, Plaintiff's claim accrued in its entirety in September 2016, because it was at this time that Plaintiff "was aware of a dispute about his sentencing calculations." Doc. 32 at 20-21. Further,

it is Defendants' position that, even if Plaintiff's claim against Warden Defendants accrued in late 2017 or early 2018 when he spoke to Warden Defendants about errors in the calculation of his sentence, his claim is still time-barred. *Id.* at 21-22. Conversely, Plaintiff believes that his claim did not accrue until he was finally released from the state's jurisdiction on October 27, 2020, by the state district court's stipulated order. Doc. 40 at 23-24. Alternatively, Plaintiff submits that the accrual date for his claim is September 6, 2019,[6] when he was erroneously placed on parole, or perhaps on June 4, 2020, when he was taken into custody for having violated parole, though he should not have been on parole at that time because the state had no jurisdiction over him. *Id.* at 24-25. Finally, Plaintiff posits that the actions underlying his claim could be considered ongoing conduct. *Id.* at 25-26.

In his Second Amended Complaint, Plaintiff alleges that he "was unlawfully kept under the jurisdiction of the state either by incarceration, parole, or probation, from September 7, 2016 until . . . October 27, 2020," the date he was finally released, causing "the wrongful restriction of his liberty" during that time. Doc. 16 at 11. Given this allegation, the Court concludes that Defendants arguments regarding the statute of limitations lack merit. The question presented here—the date on which Plaintiff's claims accrued—is answered by the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87. The Court went on to address the appropriate accrual date for this type of claim:

---

[6]   *See supra* note 2.

> Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim *has not yet arisen*. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence *does not accrue until the conviction or sentence has been invalidated*.

*Id.* at 489-90 (citations omitted) (emphases added); *see also Alvillar v. Utah State Bd. of Pardons*, 380 F. App'x 764, 765-66 (10th Cir. 2010) (holding that, pursuant to *Heck*, a parolee could not pursue a claim for relief under § 1983 premised upon his sentence until his sentence was invalidated, because such a claim does not accrue until that time).

In the interest of clarity, the Court highlights another case with facts similar to those at hand. In *Carroll v. Lee*, No. C08-975, 2009 WL 1651426 (W.D. Wash. June 10, 2009), the plaintiff sued prison officials under § 1983 and § 1985, alleging that their miscalculation of his sentence caused him to remain in their custody longer than he should have. *Id.* at *1. Prior to initiation of the suit, a state trial court released the plaintiff, because it concluded that the sentencing calculations were erroneous and that his sentence had indeed expired. *Id.* The defendants moved for judgment on the pleadings pursuant to Rule 12(c), asserting that the plaintiff's claims were time-barred because they accrued at the time the defendants committed their wrongful acts, which fell outside of the statute of limitations period. *Id.* at *1-2. The plaintiff, however, argued that his claims accrued on the date the state trial court ordered him released from custody. *Id.* at *1. The court in *Carroll* rejected the defendants' argument as running afoul of *Heck*: "The principle established by *Heck* . . . compels the [c]ourt to hold that [the] plaintiff's § 1983 and § 1985 claims, stemming from the allegedly negligent miscalculation of his release date, could not have accrued until . . . the state court determined that [the] plaintiff's sentence had expired . . . earlier." *Id.* at *2.

These principles are readily applicable here.[7]  In this case, Plaintiff's sentence was deemed erroneous by the state district court on October 27, 2020.  Doc. 16-1 at 1-2.  Therefore, under *Heck*, his claims did not arise until that time; the accrual date for his claims, then, is October 27, 2020.  Plaintiff filed his initial complaint in the First Judicial District Court of Santa Fe County, New Mexico on November 19, 2021, well within the applicable three-year statute of limitations.  Doc. 1 at 7.  As Plaintiff's claim predates the expiration of the statute of limitations, the need for the Court to address the continuing violation doctrine and the repeated violation doctrine is obviated.

For these reasons, the Court recommends that Plaintiff's Fourteenth Amendment claim not be dismissed as time-barred.

## VI.   Plaintiff Plausibly Alleges Violations of a Clearly Established Right to Freedom from Incarceration Past the Expiration of His Sentence Under the Fourteenth Amendment Such That the Defense of Qualified Immunity is Not Available to Certain Defendants

The Court first addresses the second prong of the qualified immunity analysis, whether "the right was clearly established at the time of the challenged conduct."  *Cummings*, 913 F.3d at 1239; *see Pearson*, 555 U.S. at 236 (permitting the Court to exercise discretion over which prong of the qualified immunity analysis to address first).  Accordingly, the Court's analysis is informed by the available precedent applicable to Plaintiff's claims.

In his Fourteenth Amendment Due Process claim, Plaintiff alleges that Defendants failed to afford him sufficient process before depriving him of liberty.  *See* Docs. 16 at 12.  An individual's Fourteenth Amendment rights are violated when they are detained by the State past

---

[7]       The Court recognizes that Plaintiff is not mounting a challenge to the underlying *validity* of his sentence.  This, however, does not alter the relevant analysis:

> [The plaintiff]'s claim for damages was for the miscalculation of his required term of imprisonment under his valid sentences.  A judgment that the term had been miscalculated, issued while [the plaintiff] was still imprisoned, would raise the same problems that led the [Supreme] Court to hold in *Heck* that no § 1983 cause of action had accrued.

*Erlin v. United States*, 364 F.3d 1127, 1131 (9th Cir. 2004); *see also Carroll*, 2009 WL 1651426, at *2.

the expiration of their sentence, because the state's power to detain expires at the time the

sentence expires.  *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 246 (1972).  Indeed,

incarcerated individuals hold a liberty interest in being released upon the expiration of their

sentence.  *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993);

*Shorts v. Bartholomew*, 225 F' Appx. 46, 51 (6th Cir. 2007); *Saiz v. Franco*, No. 15-CV-587,

2018 WL 1124197, at * 6 (D.N.M. Feb. 27, 2018); *see Davis v. Hall*, 375 F.3d 703, 713-14 (8th

Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001); *Sample v. Diecks*, 885

F.2d 1099, 1114 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en

banc).  "To be sure, if [an individual] is being incarcerated after he should have been released

under [state] law, then his confinement violates his right to due process."  *McGregor v. Thurlow*,

435 F. App'x 779, 780 (10th Cir. 2011); *see also Sample*, 885 F.2d at 1114; *Golson v. Dep't of

Corr.*, 914 F.2d 1491 (4th Cir. 1990) (unpublished table decision) ("Incarceration beyond the

termination of one's sentence may state a claim under the due process clause."); *Saiz*, 2018 WL

1124197, at * 6 (recognizing that "detention of a prisoner beyond the expiration of his sentence

constitutes a deprivation of due process").  As illustrated here, the Tenth Circuit precedent on the

issue here is somewhat meager.  However, this is not fatal to Plaintiff's efforts to resist qualified

immunity for Defendants.  *See Cummings*, 913 F.3d at 1239.  In the Court's view, there is ample

precedent that sufficiently alerted Defendants that there is a constitutional right to release upon

expiration of a term of incarceration.

For example, in *Davis*, the plaintiff received a one-year sentence with credit for time

already served in custody following conviction pursuant to a plea agreement.  375 F.3d at 706.

At the time of this conviction, the plaintiff had spent one and one-half years in custody;

accordingly, he should have been released at the time of conviction, and this was reflected on his

judgment and sentence. *Id.* at 706-707. However, the plaintiff was returned to the county jail

and other correctional facilities. *Id.* at 707-708. The plaintiff complained of his continued

incarceration to officials, including a probation officer, but was met with unconcern. *Id.* at 708.

Finally, after meeting with a parole officer, the plaintiff was released, after spending 57 days in

custody past his release date. *Id.* at 708-709. The plaintiff filed suit under § 1983 against

numerous defendants in their individual capacities alleging violations of his Fourteenth

Amendment rights and false imprisonment under state law. *Id.* at 709. The district court found

that some of the individual defendants were not entitled to qualified immunity, and they

appealed. *Id.* at 709-710. The Eighth Circuit Court of Appeals, relying on intra- and extra-

circuit cases, held that the plaintiff claimed deprivation of a clearly established constitutional

right—a protected liberty interest against confinement past the completion of his sentence. *Id.* at

712-718. Accordingly, excepting one individual defendant whom the district court found was

entitled to qualified immunity, the Eighth Circuit affirmed the district court's ruling. *Id.* at 720.

  In *Haygood*, following a successful petition for a writ of habeas corpus, the plaintiff

brought a claim pursuant to § 1983 alleging due process and Eighth Amendment violations by

prison officials after he spent five years in custody past the expiration of his sentence because his

release date was incorrectly calculated. 769 F.2d at 1352-53. At least 17 months of these five

years occurred after the plaintiff complained about the calculation of his sentence to prison

officials. *Id.* at 1356. Following an award of damages in the district court, the defendants

appealed to the Ninth Circuit. *Id.* at 1352. Sitting en banc, the Ninth Circuit affirmed the

damages award. *Id.* at 1353, 1359. As relevant here, in the context of due process, the Ninth

Circuit considered the factors specific to the plaintiff's case. Specifically, it recognized that the

plaintiff was afforded due process by the court that imposed his sentence; that is, he was

"properly convicted . . . and properly sentenced." *Id.* at 1357-58. The process due, according to the Ninth Circuit, was an opportunity for the plaintiff to be heard on his complaints that his sentence had expired, rather than state officers extending his time in custody in the absence of such process: "When an official with the authority to rectify an erroneous practice receives notice of the wrongful practice and its harmful consequences, due process requires the state to provide a hearing before further denial of liberty can be said to be free from § 1983 liability." *Id.* at 1358-89.

Likewise, in *Alexander v. Perrill*, 916 F.2d 1392 (9ᵗʰ Cir. 1990), following a successful petition for a writ of habeas corpus, the plaintiff, whose sentence was overcalculated by about ten months, filed suit under § 1983 alleging that the failure of prison officials to investigate his complaints that his sentence was incorrectly calculated amounted to deliberate indifference to his constitutional rights. *Id.* at 1394-95. The district court denied the defendants' motion for summary judgment brought on qualified immunity grounds, concluding that their failure to investigate the plaintiff's complaints regarding the calculation of his sentence was indeed deliberate indifference to a clearly established right. *Id.* at 1395. The Ninth Circuit affirmed, noting that although, as in *Haygood*, "the plaintiff's argument that he was entitled to be released from prison was not clearly meritorious from the face of the objections he lodged with prison officials," the defendants did nothing to address evidence from the plaintiff that he was entitled to release, yet their "responsibilities included ensuring the proper calculation of prison sentences." *Id.* at 1398. It continued:

> Nevertheless, when faced with the possibility that a mistake was made, they did nothing to attempt to determine whether [the plaintiff]'s claim was meritorious. We simply will not, as the defendants urge, embrace a rule which would allow prison officials to stand by idly after an inmate has raised the prospect that he is being unlawfully incarcerated and has provided documentary evidence in support of his claim.

*Id.*

In *Sample*, the plaintiff was incarcerated on a life sentence as a result of a murder conviction. 885 F.2d at 1102. This conviction was overturned on appeal, and the plaintiff was afforded bail while he awaited retrial. *Id.* Prison officials would not release the plaintiff, because, according to them, he still had time to serve in custody on a different sentence. *Id.* This determination was erroneous, however, and the plaintiff remained in custody for over nine months after that sentence had expired. *Id.* at 1102-1103. The plaintiff commenced suit against prison officials pursuant to § 1983, alleging that his extended detention violated his constitutional protections in the Eighth and Fourteenth Amendments. *Id.* at 1103, 1107-1108, 1113. The district court found that one of the defendants had violated the plaintiff's Eighth Amendment right to be free of cruel and unusual punishment, and that another had violated the plaintiff's Fourteenth Amendment right to procedural due process. *Id.* at 1103. While the due process claim at issue in the plaintiff's case was ultimately remanded to the district court for the entry of additional findings, *see id.* at 1118-19, on appeal, the Third Circuit[8] emphasized that the plaintiff had a liberty interest in release at the expiration of his sentence, and that the state could not deprive him of his liberty without due process. *Id.* at 1114.

In *Shorts*, the plaintiff was sentenced to one year of incarceration. 255 F. App'x at 47. Near the end of his sentence, he sought information on his release date from prison and jail officials. *Id.* at 48. The plaintiff's release date passed, and he received no clear explanation from prison officials. *Id.* After spending seven more months in custody, with no change in his status, the plaintiff's family retained legal counsel to look into the matter. *Id.* Counsel directed

---

[8] In another case, *Moore v. Tartler*, 986 F.2d 682, 686-87 (3d Cir. 1993), the Third Circuit relied on *Alexander* and *Haygood* for the proposition that prison officials who are faced with credible claims of sentencing calculation errors but fail to take action can be found to have acted with deliberate indifference to the deprivation of a plaintiff's constitutional rights.

26

officials to information already in their possession, including the judgment and sentence for the
plaintiff's case, the jail roster which reflected the plaintiff's sentence, a letter from prison
officials to the plaintiff noting that the jail would calculate his release date, and the plaintiff's
inquiries about his release date.  *Id.*  The plaintiff was released from jail two days after his
family's retention of counsel, after spending over 200 additional days in custody past the term of
his sentence.  *Id.* at 47 n.2, 48-49.  As relevant here, the plaintiff brought suit against the sheriff
in his individual capacity under § 1983, alleging violations of the plaintiff's rights under the
Fourth and Fourteenth Amendments. *Id.* at 49.  While the plaintiff was ultimately unsuccessful in
his claim against the sheriff in his individual capacity (though his claim against the sheriff in his
official capacity was allowed to proceed), the Sixth Circuit nevertheless recognized important
principles regarding his claims.  First, it noted that "the right at issue is secured by the
Constitution and laws of the United States . . . beyond dispute: when a prisoner's sentence has
expired, he is entitled to release." *Id.* at 51.  Additionally, the Sixth Circuit observed that this
right is found in the Due Process Clause of the Fourteenth Amendment.  *Id.*

     The absence of published, Tenth Circuit precedent forms the basis of Defendants'
arguments for qualified immunity, but it does little to aid them on this claim.  Doc. 32 at 14.  In
fact, the right at issue here has been recognized in this district.  *See, e.g.*, *Saiz*, 2018 WL
1124197, at *6 (citing *Shorts*, 255 F. App'x at 51, and *Hainey v. Sirmons*, No. 07-CV-205, 2007
WL 2703166, at *6, *10 (W.D. Okla. Sept. 14, 2007)).  This district has noted that, although
there is regrettably an absence of published, Tenth Circuit precedent, our Circuit nevertheless
recognizes that the due process and Eighth Amendment rights of incarcerated individuals are at
issue if they are held beyond their proper release date.  *See Delgadillo v. Dorman*, No. 13-CV-
1188, 2015 WL 13651199, at *3 (D.N.M. Sept. 1, 2015) (citing *McGregor*, 435 F. App'x at 780,

and *Mitchell v. N.M. Dep't of Corr.*, 996 F.2d 311 (10th Cir. 1993) (unpublished table decision)).

And, in a case with facts analogous to those at hand, Tenth Circuit Judge Robert E. Bacharach,

then Magistrate Judge for the Western District of Oklahoma, concluded that the weight of

authority from other circuits, coupled with the available precedent from the Tenth Circuit,

"alerted prison administrators to a constitutional right to release on the expiration of a prison

term." *Hainey*, 2007 WL 2703166, at *2-3, *7.

    Defendants' argument in this regard relies nearly exclusively on *Routt v. Howry*, 835 F.

App'x 379 (10th Cir. 2020).  Doc. 32 at 14-16.  There, the plaintiff filed claims against prison

officials pursuant to § 1983 alleging that their failure to apply credit for time already served in

custody resulted in him remaining incarcerated for 53 days past his discharge date.  *Rout*, 835 F.

App'x at 380-81.  His individual-capacity claim against the defendants was dismissed under Rule

12(b)(6) after the district court concluded that the defendants were entitled to qualified immunity

because there was no clearly established law demonstrating the unconstitutionality of their

actions.  *Id.* at 381.  The Tenth Circuit affirmed, noting that the plaintiff directed it to "no

Supreme Court authority, and conced[ed] that there is no Tenth Circuit precedent directly on

point."  *Id.* at 383.  With regard to extra-circuit cases, the Tenth Circuit distinguished those

arising in the Ninth Circuit from the facts of the plaintiff's case.  Most notably, it found the

propositions from *Haywood* and its progeny—that prison officials have an obligation to

investigate inmates' claims of computational errors in the calculation of sentences, and that

failure to do so gives rise to tenable due process and Eighth Amendment claims—were

inapplicable to the plaintiff's claims because his "claim of over-detention [was] not caused by

the prison officials' failure to investigate."  *Id.* at 383.  Specifically, in the plaintiff's case, he

began complaining to the defendants about the calculation of his sentence long before his

sentence, even once properly calculated, was due to expire.  *Id.*  Moreover, the plaintiff's motion in the sentencing court regarding the application of credit for time served, while ultimately successful, was filed prior to the expiration of his properly-calculated sentence, though not ruled upon until after such sentence expired.  *Id.*  Likewise, the Tenth Circuit distinguished *Moore* from the plaintiff's case, noting that the principle from *Moore* concerns whether those tasked with interpreting a sentencing order stood "'idly by'" in the wake of concerns raised by an incarcerated individual.  *Id.* at 385 (quoting *Moore*, 986 F.2d at 687 (3d Cir. 1993)).  This stood in contrast to the plaintiff's case, where an existing policy concerning the application of credit for time served to a sentence contemplated no precise manner in which the defendants should have acted in response when plaintiff complained about not properly receiving credit for time served.  *Id.*  For these reasons, the Tenth Circuit concluded that the facts of the plaintiff's case were too dissimilar from extra-circuit cases concerning over-detention such that no clearly established law demonstrated that the defendant's actions were unconstitutional.  *Id.*  The facts in the instant case as outlined above, however, are quite different from the facts in *Routt* and are more akin to those in other cases illustrated above.

In light of the precedent from other Circuits, as well as the unpublished but relevant authority from the Tenth Circuit, the Court concludes that Defendants were aware that individuals in their custody have a constitutional right to release upon the expiration of their sentence and that a violation of this right constitutes a deprivation of due process, contrary to the Fourteenth Amendment.  The Court turns now to the first part of the qualified immunity test, whether Defendants violated this right.  *See Cummings*, 913 F.3d at 1239.

To hold Defendants liable in their individual capacities, Plaintiff must show that they were personally involved in causing Plaintiff to remain under the state's jurisdiction after the

date that jurisdiction expired.  *See Foote v. Spiegel*, 118 F.3d 1416, 1426 (10th Cir. 1997)

("Individual liability under § 1983 must be based on personal involvement in the alleged

constitutional violation.").  Accordingly, the Court must examine the allegations in Plaintiff's

Second Amended Complaint as to each Defendant to determine whether Plaintiff states a

plausible claim for relief.  Plaintiff proceeds under a theory that Defendants acted recklessly or

were deliberately indifferent to his harms.  Doc. 16 at 12; 40 at 12-13.

Per the Second Amended Complaint, the state's jurisdiction over Plaintiff expired on

September 6, 2016.  Doc. 16 at 6.  After the expiration of his sentence, Plaintiff participated in

meetings with Warden Defendants, who admitted that, based on information available to them,

including the judgment and sentence for Plaintiff's case and the mechanism used for calculating

his sentence, the state's jurisdiction over him expired.  *Id.* at 7.  Warden Defendants took no

action.  *Id.*  Moreover, Defendant Langston, Plaintiff's parole officer, was aware that the state's

jurisdiction over Plaintiff had expired and Plaintiff alerted him to the same.  *Id.* at 9.  Defendant

Langston took no action.  *Id.*  In light of these facts, as to these Defendants, the Court concludes

that the defense of qualified immunity is unavailable at this juncture.  *See Moore*, 986 F.2d at

686 ("Deliberate indifference has been demonstrated in those cases where prison officials were

put on notice and then simply refused to investigate a prisoner's claim of sentence

miscalculation.").

However, the Second Amended Complaint makes no allegations specific to this claim

regarding Records Defendants.  While Plaintiff makes reference to the occupational duties of

these Defendants, i.e., calculating, interpreting, and overseeing sentence calculations, he does not

claim that these Records Defendants had personal knowledge of the details specific to his

situation, or that he had contact with them or otherwise made them aware of errors in his

sentence calculation.  Doc. 16 at 2-3.  This is insufficient to sustain a claim against them.  *See*

*Woordward v. City of Worland*, 977 F.2d 1392, 1399 n.11 (10th Cir. 1992) (noting that

recklessness generally satisfies the scienter requirement of a § 1983 claim because it "include[s]

an element of deliberateness—a *conscious* acceptance of a known, serious risk" (internal

quotation marks and citation omitted)); *Saiz*, 2018 WL 1124197, at *9 ("Deliberate indifference

is a stringent standard of fault, requiring proof that an official disregarded a known or obvious

consequence of his action or inaction." (alteration, internal quotation marks, and citation

omitted)).  Therefore, the Court recommends the presiding judge enter a judgment in favor of

Records Defendants on qualified immunity grounds as to Plaintiff's due process claim, but deny

the defense of qualified immunity to the remaining Defendants at this time.

**VII.   The Parties Have Not Demonstrated That the Doctrine of Collateral Estoppel
Applies and Plaintiff Has Not Made a Binding Judicial Admission**

Both Plaintiff and Defendants attempt to use the doctrine of collateral estoppel to their

benefit.  The Court begins with the argument advanced by Defendants in their Motion.

Defendants limit their discussion of collateral estoppel to four sentences and a citation to a single

case that discusses collateral estoppel.  Doc. 32 at 18.  Defendants do not set forth the elements

of collateral estoppel, nor do they direct the Court to evidence that would satisfy each of these

elements, as is their burden.  *See Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004)

(applying New Mexico law and noting that "the party invoking the doctrine" makes a prima facie

case for collateral estoppel if they "provide sufficient evidence to *meet all elements* of [the] test"

(emphasis added)); *O'Brien v. Behles*, 2020-NMCA-032, ¶ 54, 464 P.3d 1097 (observing that "it

is the burden of the movant invoking the doctrine of collateral estoppel to introduce sufficient

evidence for the court to rule on whether the doctrine is applicable" (internal quotation marks

and citation omitted)).  Defendants' argument goes no further than asserting that Plaintiff's

"probation revocations and habeas decisions have preclusive effect against [him] because he was a party and the issues were fully litigated." Doc. 32 at 18. Thus, according to Defendants, Plaintiff should be unable to litigate the issue whether the state district court had jurisdiction to sentence him "for probation-parole violations or commit him to new probation-parole terms." *Id.* The Court pauses to note that it is under no obligation to address arguments wanting for adequate development. *Glossip v. Chandler*, No. 14-CV-665, 2021 WL 4760383, at *7 (W.D. Okla. Oct. 12, 2021) (stating that the "district court is free to disregard arguments that are not adequately developed"). However, even assuming *arguendo* that Defendants' argument is meritorious, it satisfies just two elements of the four-part test for collateral estoppel—a test only passed if every element is met. *See Salguero*, 366 F.32d at 1173. In the absence of such a showing, the Court is without a basis to conclude that Plaintiff is collaterally estopped from pursuing any issue relevant to this litigation.

On the other hand, Plaintiff attempts to offensively collaterally estop Defendants from "suggesting propriety around [his] sentence interpretation" based on the state district court's stipulated order finally releasing him from the state's jurisdiction. Doc. 40 at 20. In New Mexico, "the doctrine of offensive collateral estoppel may be applied when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully." *O'Brien*, 2020-NMCA-032, ¶ 49 (internal quotation marks and citation omitted). As noted above, Defendants claim offensive collateral estoppel is not available to Plaintiff because the state district court's stipulated order necessarily was uncontested by the prosecution, and as such is not a true adjudication of the issues it addresses. Doc. 44 at 10. The Court agrees, as this position is consistent with New Mexico law. *See Franklin*, 981 F.2d at 1170 (noting that the Court must apply state collateral estoppel principles to ascertain whether an

issue is precluded in § 1983 litigation); *cf. Pope v. The Gap*, 1998-NMCA-103, ¶ 27, 125 N.M.

376, 961 P.2d 1283 (stating that New Mexico law does not give consent judgments preclusive

effect).

      Finally, the Court rejects Defendants' position that Plaintiff's assent to the state district

court's stipulated order constitutes a judicial admission with binding effect. Doc. 32 at 6 n.1. In

their Motion, Defendants limit their discussion of this topic to a single-sentence footnote in their

recitation of the factual background. *Id.* Defendants only develop additional argument in their

reply brief. Doc. 44 at 9-10. First, this Court generally does not address arguments raised for the

first time in a reply brief, because doing so serves to prejudice the opposing party by depriving

them of a meaningful opportunity to respond. *See JL v. NM Dep't of Health*, 165 F. Supp. 3d

1048, 1065 (D.N.M. 2016). Nevertheless, what Defendants seek to bind Plaintiff to are

statements referring to Defendants' actions as "'oversights,'" "'mistakes,'" and "'inadvertence,'"

which, according to Defendants, bar him from alleging that Defendants acted with the requisite

mental state required for a § 1983 claim. Doc. 44 at 9-10 (citing Docs. 16-1, 32-1). However,

the doctrine of judicial admissions can cause a court to accept "proof on a factual question," not

"bind the court on a point of law." *Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 511 (10th Cir. 1978)

(citing *Equitable Life Assurance Soc'y v. MacGill*, 551 F.2d 978, 983-84 (5th Cir. 1977) for the

proposition that a court is not bound to accept stipulations as to questions of law); *see also Swift*

*& Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289-90 (1917) ("If the stipulation is to be treated

as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since

the court cannot be controlled by agreement of counsel on a subsidiary question of law.").

Whether Defendants' actions amount to recklessness or deliberate indifference, as Plaintiff

alleges, is a question of law. *Green v. Post*, 574 F.3d 1294, 1303-1304 (10th Cir. 2009); *see also*

*Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) ("The question of the legal standard for deliberate indifference is a question of law.").

For these reasons, the Court recommends that the presiding judge reject Plaintiff's and Defendants' arguments regarding issue preclusion, and Defendants' argument that Plaintiff has made a binding judicial admission.

## VIII.   Plaintiff Has Not Demonstrated a Need for Discovery Prior to the Resolution of Defendants' Motion

Finally, the Court briefly addresses Plaintiff's request that discovery be permitted prior to the resolution of Defendants' Motion. The Court begins by noting that Plaintiff cites no relevant authority to support his position here. This alone is grounds for the Court to decline to address the issue. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (alteration, internal quotation marks, and citation omitted)). What Plaintiff does cite, and rely wholly upon, is Fed. R. Civ. P. 56(d), which provides, in relevant part, for the taking of discovery prior to the resolution of a motion for summary judgment if the nonmovant demonstrates by affidavit that it cannot present essential facts to oppose the motion. Plaintiff's counsel has submitted a Rule 56(d) affidavit. Doc. 39. But this is not a motion for summary judgment, and in ruling on a motion brought pursuant to Rule 12(c), such affidavits need not be considered. *See Salopek v. Zurich Am. Life Ins. Co.*, 428 F.Supp.3d 609, 617 (D.N.M. 2019) ("Nowhere in Rule 56 does it say, nor does [the p]laintiff supply authority for the proposition that subsection (d) applies to a motion for judgment on the pleadings under Rule 12(c). As a summary judgment motion is not before this [c]ourt, Rule 56(d) is inapplicable."); *Montano v. Centurion Corr. Healthcare of NM, LLC,* No. 15-CV-415, 2019 WL 3415562, at *2 (D.N.M. July 29, 2019) ("Rule 56(d), a summary

judgment rule, does not apply to motions for judgment on the pleadings governed by Rule 12(c).").

Moreover, the Court is guided by the practical considerations identified by the Tenth Circuit when deciding questions of qualified immunity.  As was done in this case, courts routinely stay discovery when a dispositive motion raises qualified immunity as a defense.  Doc. 35.  *See Stoncipher v. Valles*, 759 F.3d 1134, 1148 (10th Cir. 2014) (noting that "because qualified immunity protects against the burdens of discovery as well as trial, a district court may stay discovery upon the filing of a dispositive motion based on qualified immunity").  Generally, whether the defense of qualified immunity is available to defendants should be resolved in the early stages of litigation and, if possible, prior to the discovery process.  *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (noting that "qualified immunity questions should be resolved at the earliest possible stage in litigation" and "even such pretrial matters as discovery are to be avoided if possible, as inquiries of this kind can be peculiarly disruptive of effective government" (alteration, internal quotation marks, and citations omitted)).  It is for these reasons that, even where Rule 56(d) is properly invoked, "there is a strong policy justification for staying discovery and refusing requests for additional discovery once a defendant invokes qualified immunity as a defense."  *Martin v. Cty. of Santa Fe*, 626 F. App'x 736, 740 (10th Cir. 2015).[9]

Therefore, the Court will recommend that the presiding judge decline to entertain Plaintiff's request for discovery at this time.

---

[9]    Nothing in the Court's analysis here should be construed to suggest that discovery under Rule 56(d) is never warranted in cases where qualified immunity is raised.  Rather, the Court highlights these principles because they were raised in Defendants' reply brief (Doc. 44 at 12) and to illustrate that such a request is particularly inapposite at this juncture, where summary judgment is not before the Court, and that even if Plaintiff had properly invoked Rule 56(d), the Tenth Circuit has identified the practical considerations at play when questions such as those raised in Defendants' Motion arise.  Of course, Plaintiff is free to invoke Rule 56(d) as a vehicle for discovery should the litigation present a time when it is proper to do so.

## CONCLUSION AND RECOMMENDATION

As to Plaintiff's Fourth Amendment claim, the undersigned recommends that the presiding judge **GRANT** Defendants' Motion and dismiss the claim with prejudice because he has failed to plead a plausible claim for relief.  The need to consider other arguments as to this claim is therefore obviated.

As to Plaintiff's Fourteenth Amendment claim, the undersigned recommends that the presiding judge **DENY** Defendants' Motion insofar as it seeks to bar Plaintiff's claim under the statute of limitations; **GRANT** Defendants' Motion as it pertains to the defense of qualified immunity for Records Defendants; and **DENY** Defendants' Motion as it pertains to the defense of qualified immunity for the remaining Defendants.

The undersigned further recommends that the presiding judge **REJECT** Plaintiff's and Defendants' competing arguments regarding issue preclusion, and Plaintiff's request for discovery.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
United States Magistrate Judge