IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLIFTON WHITE,

    Plaintiff,

v.                                                                         No. 2:21-cv-1204-MIS-JHR

LISA PADILLA, et al.,

    Defendants.

## ORDER DENYING DEFENDANT CORECIVIC'S MOTION TO CERTIFY, GRANTING DEFENDANT CORECIVIC'S MOTION TO RECONSIDER, AND DISMISSING CASE AS TO CORECIVIC

**THIS MATTER** is before the Court on two Motions from Defendant CoreCivic, Inc.: a Motion to Certify February 9, 2024 Order for Interlocutory Appeal, ECF No. 89, and a Motion for Reconsideration, ECF No. 104. Plaintiff Clifton White responded to both Motions, respectively, ECF Nos. 94, 105,[1] and Defendant replied, respectively, ECF Nos. 99, 107. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **GRANT** Defendant CoreCivic's Motion to Reconsider, ECF No. 104, **DENY AS MOOT** CoreCivic's Motion for Certification, ECF No. 89, and **DISMISS WITH PREJUDICE** Plaintiff's claims against CoreCivic.

### I.    BACKGROUND

Plaintiff spent most of the period between 2016 and 2020 either on parole or incarcerated in facilities operated variously by the state of New Mexico and Defendant CoreCivic, Inc.

---

[1] In his Response to Plaintiff's Motion for Reconsideration, Plaintiff has included a "Cross Motion" for this Court to certify the statute-of-limitations question at issue to the New Mexico Supreme Court. *See* ECF No. 105 at 19.

("CoreCivic"). *See* ECF No. 61 ("Third Amended Complaint") ¶¶ 28, 49, 53 69. Plaintiff alleges that his incarceration and parole custody during that period was unlawful and a result of failures by corrections facility staff—both New Mexico state employees and CoreCivic employees—to appropriately credit Plaintiff's credits towards release. *See id*. ¶ 95.

From April 2018 until September 2019, Plaintiff was incarcerated in a CoreCivic facility. *Id*. ¶ 72(o). He was then released on parole. *Id*. ¶ 80. Plaintiff was then reincarcerated from June 2020 until October 2020, when the Second Judicial District Court for the State of New Mexico determined that Plaintiff was no longer lawfully subject to the jurisdiction of the state. *Id*. ¶ 93.

On November 19, 2021, Plaintiff filed his original Complaint in the First Judicial District Court for the County of Santa Fe, New Mexico. *See* ECF No. 1 at 7. That Complaint was then removed to this Court. *Id*. at 1-3. After filing a subsequent amended complaint, Plaintiff filed his operative Third Amended Complaint[2] on June 2, 2023. Plaintiff named CoreCivic as a Defendant for the first time in his Third Amended Complaint. *See* ECF No 64 at 4. On July 17, 2023, Defendant CoreCivic filed a Motion to Dismiss Plaintiff's Third Amended Complaint. *Id*. *Inter alia*, and crucially as to the Court's disposition of CoreCivic's Motion to Dismiss, CoreCivic argued that the relevant statute of limitations—three years[3]—for Plaintiff's claims against it had expired. *See id*. at 4-6.

On February 9, 2024, the Court issued an Order denying CoreCivic's Motion to Dismiss. *See* ECF No. 82.[4] The Court first determined that the statute of limitations for false imprisonment claims under New Mexico state law began to accrue upon a litigant's release from incarceration.

---

[2] Although styled as Plaintiff's "Third Amended Complaint," the operative complaint is Plaintiff's second *amended* complaint, and his third complaint overall.

[3] *See* N.M. Stat. Ann. 1978, § 37-1-8.

[4] The Court's Order also adjudicated Defendant New Mexico Corrections Department's separate Motion to Dismiss. *See* ECF No. 82 at 10. The Court's findings and conclusions as to NMCD are unaffected by this Order.

2

*See* ECF No. 82 at 8-9. However, the Court misunderstood[5] Plaintiff's Third Amended Complaint as indicating that he had been *continuously* incarcerated during the period between his transfer to a CoreCivic facility in April 2018 and his eventual release from carceral custody in October 2020. Accordingly, the Court denied CoreCivic's Motion to Dismiss on the grounds that the statute of limitations for Plaintiff's claims did not expire until October 2023. *See id*. at 10.

Defendant CoreCivic then filed a Motion to Certify this Court's Order for an interlocutory appeal, in which it identified the fact that Plaintiff was released from incarceration in a CoreCivic facility and into parole custody in September 2019, before his *reincarceration* in a state-run facility in June of 2020. *See* ECF No. 89 at 4, 8.

Given this representation, the Court convened a hearing on Defendant's Motion for Certification on May 28, 2024. *See* ECF No. 102. At that hearing, both Parties concurred that during the period between September 2019 and June 2020, Plaintiff had been subject to parole custody, rather than incarcerated in a detention facility. *See* ECF No. 103 at 1. Given the Court's apparent misunderstanding of the facts as alleged, Counsel for CoreCivic made an oral motion for the Court to reconsider its previous order denying CoreCivic's Motion to Dismiss. *See id*. Counsel for Plaintiff requested the opportunity to brief the issue of reconsideration and Plaintiff's custodial status, which this Court granted. *See id*. at 2. That briefing is now before the Court.

## II.   ANALYSIS

CoreCivic moves this Court to reconsider its Order denying CoreCivic's Motion to Dismiss. *See* ECF No. 104. Plaintiff first argues that CoreCivic's Motion does not satisfy the standard required for motions to reconsider. *See* ECF No. 105 at 6-7. Given its misapprehension of the facts as alleged, the Court finds that Plaintiff does satisfy the requisite standard.

---

[5] The Court apologizes to the Parties for the additional time and expense incurred as a result of its misapprehension of the facts.

Plaintiff next argues that even upon reconsideration, the Court should find that Plaintiff's claims against CoreCivic were timely filed. Plaintiff supports this claim by arguing as follows: (1) that "in the context of Mr. White's situation, the distinction between physical custody and parole is immaterial[,]" *id*. at 7; (2) that Plaintiff was prevented from litigating his claims by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994), *id*. at 10; (3) that Plaintiff did not truly "discover" his injury until October 2020, *id*. at 15; (4) that the "continuing wrong" doctrine applies, extending the date of accrual until Plaintiff's final release from incarceration in October 2020, *id*. at 14; and (5) that the "relation-back" doctrine gave CoreCivic notice of the claims against it, *id*. at 16.

The Court analyzes and rejects each claim in turn. Upon reconsideration, the Court also finds that Plaintiff's claims against CoreCivic began to accrue as of September 2019. Given that CoreCivic was not named as a Defendant until June 2023, Plaintiff's claims against CoreCivic were not timely filed and must be dismissed.

Finally, Plaintiff moves for this Court to certify the question of when claims for false imprisonment begin to accrue under New Mexico state law to the Supreme Court of New Mexico. *See* ECF No. 105 at 19. The Court declines to do so.

### A. CoreCivic identifies sufficient grounds for this Court to reconsider its Order

While motions to reconsider are not explicitly addressed by the federal rules of civil procedure, Federal Rule of Civil Procedure 54(b) provides that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

4

The Tenth Circuit has held that district courts have broad autonomy in considering their own interlocutory orders. *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). A "motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (citing *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Specific situations warranting reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants*, 204 F.3d at 1012.

Plaintiff argues that CoreCivic's Motion "does not present any new evidence or legal arguments that would warrant reconsideration[,]" and that "[t]he Court's decision was based on a thorough analysis of the applicable law and the facts of the case." ECF No. 105 at 6. This latter point is objectively incorrect: as was made clear at the May 28, 2024, hearing, this Court misunderstood Plaintiff's claims regarding his dates of incarceration in its Order denying CoreCivic's Motion to Dismiss, ECF No. 82. CoreCivic has thus adequately identified an error of fact contained in the Court's Order and has satisfied the standard required for this Court to analyze its Motion to Reconsider.

**B. The distinction between physical custody and parole is material**

In its Order denying CoreCivic's Motion to Dismiss, ECF No. 82, this Court misconstrued Plaintiff as having alleged that he was *continuously* incarcerated during the period between his incarceration in a CoreCivic facility in April 2018 and his final release from a state-run facility in October 2020. Operating under that misapprehension, the Court found that the date of accrual for Plaintiff's claims against CoreCivic began in October 2020 and denied CoreCivic's Motion to Dismiss. *See id.* at 10.

Plaintiff, however, did *not* in fact allege that he was continuously incarcerated for that period. Rather, Plaintiff alleged that he "was released from detention and illegally placed on parole in September 2019[.]" *See* Third Am. Compl. ¶ 80. Plaintiff reaffirmed this allegation orally at this Court's hearing on May 28, 2024.

Plaintiff now argues that even if he was released on parole in September 2019, the distinction between physical custody and parole is immaterial, because "[p]arole, like physical imprisonment, involves significant oversight and restriction, meaning the challenges and barriers to filing legal claims are similarly significant." ECF No. 105 at 9. Plaintiff cites cases which purportedly equate the legal status of individuals subject to parole with incarceration, and claims that "the challenges and restrictions on accessing legal resources are similar in both circumstances." *Id*. at 8.

The Court does not concur. In making its initial determination as to the date of accrual, this Court cited to *Gose v. Board of County Commissioners of County of McKinley*, 727 F. Supp. 2d 1256 (D.N.M. 2010), and finds its reasoning informative here. As articulated in *Gose*,

> there are sound policy reasons for the accrual rule that the Court believes the Supreme Court of New Mexico would adopt. The Supreme Court of the United States noted the policy behind finding that the statute of limitations begins to run against an action for false imprisonment when the alleged imprisonment ends: "[T]he reality that the victim may not be able to sue while he is still imprisoned."

727 F. Supp. 2d at 1265-66 (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007).

Between September 2019 and June 2020, however, Plaintiff was *not* imprisoned. Given that, the justifications which warrant extending the date of accrual for incarcerated would-be plaintiffs do not apply.

It is true, as Plaintiff argues, that parolees are still subject to significant liberty restrictions. But those restrictions pale in comparison to the restrictions imposed upon detainees in actual

6

carceral custody. To argue that parolees are incapable of filing civil lawsuits stretches the bounds of credulity, and this Court cannot possibly conceive that the Supreme Court of New Mexico would hold as much.

### C. *Heck v. Humphrey* did not serve as a bar to Plaintiff's state claims against CoreCivic

Next, Plaintiff argues that he was barred from bringing his claims until October 2020 by *Heck v. Humphrey*. *See* ECF No. 105 at 11-14. This is incorrect for two reasons.

First, *Heck* establishes that "*a § 1983 cause of action* for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated[.]" *Heck*, 512 U.S. at 489-90 (emphasis added). Plaintiff makes no § 1983 claims against CoreCivic and cites to no cases in which *Heck* has been understood to operate as a bar to state-law claims.

Further, *Heck* only applies in situations where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Id*. at 487; *see also Graff v. Aberdeen Enterprizes, II, Inc*., 65 F.4th 500, 520 (10th Cir. 2023) ("[T]he *Heck* bar only applies when the potential conflict animating the rule exists.").

Plaintiff makes no challenges as to the validity of either his conviction or his actual as-determined sentence. Rather, Plaintiff challenges the *execution* of his sentence by various Defendants, distinct from any challenge to the sentence itself.

For both these reasons, *Heck* did not bar Plaintiff's state-law claims against CoreCivic until the October 2020 Order leading to Plaintiff's release.

### D. Regardless of its applicability, New Mexico's discovery rule was in effect from the time Plaintiff reasonably knew he was wrongfully incarcerated

Plaintiff here reiterates his previous claim that "it cannot be that an inmate's civil wrongful sentence claims accrue the moment they discover them[.]" *See* ECF No. 105 at 11; ECF No. 71 at 3. Somewhat confusingly, however, Plaintiff simultaneously appears to argue that the discovery rule *does* apply, but that Plaintiff's discovery can only be traced to the moment when his claims of wrongful incarceration had been resolved by the Order releasing him from custody. *See* ECF No. 105 at 14-15 ("The logical nexus, under the doctrine of discovery, is that the statute of limitations for Mr. White's claims did not/could not begin until the harm he suffered concluded with the district court's order releasing him in October 2020 . . . . One cannot know he has a claim until a decision is made to invalidate the sentence.").

First, the Court cannot assume that the "discovery" rule applies in the false imprisonment context. *See* ECF No. 82 at 8. The reasons for this are self-evident: a wrongfully incarcerated inmate who knows himself to be wrongfully incarcerated may be prevented from bringing suit by virtue of his carceral status.

Neither Plaintiff nor CoreCivic cite to cases discussing the issue of whether the discovery rule applies when an inmate only discovers his incarceration to be wrongful following his release from custody.

The Court need not address that issue here, however: it is evident from the face of his Third Amended Complaint that for the purposes of New Mexico's discovery rule, Plaintiff had "discovered" his wrongful incarceration as early as March 2018. *See* Third Am. Compl. ¶ 72(f) ("During the [unrelated] interview [in March 2018], Mr. White shifted the conversation to his complaints that the State had lost jurisdiction over him.").

Plaintiff now attempts to frame his complaints to prison officials that he was wrongfully incarcerated as speculation and "merely an assumption." *See* ECF No. 105 at 15. But as the

8

Supreme Court of New Mexico has made clear: "The action accrues when the plaintiff knows or should know the relevant facts, *whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action*." *Maestas v. Zaeger*, 152 P.3d 141, 160 (N.M. 2007) (emphasis added).

To hold that the discovery rule only applies upon the conclusion of litigation determining that an action is unlawful would render the rule entirely meaningless. The Court will not endorse such a finding here.

### E. Plaintiff does not articulate how the "continuing wrong" doctrine may apply

Plaintiff further argues that Plaintiff's reincarceration constituted a "continuing wrong," and that "the statute of limitations could not have started until the end of this ongoing injury, which was only when he was released pursuant to the State District Court's October 27, 2020, Order." ECF No. 105 at 14-15. This claim is not fully developed and is interspersed throughout Plaintiff's pleading regarding the possible applicability of the discovery rule.

In support of this claim, Plaintiff cites only a lone Tenth Circuit case and no New Mexico state law. First, as that case itself establishes, "the [continuing wrong] doctrine cannot be employed where the plaintiff's injury is 'definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress.'" *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996) (citing *Wilson v. Giesen*, 956 F.2d 738, 743 (7th Cir. 1992)). As discussed in this Court's disposition of Plaintiff's claims regarding *Heck*, *supra* Section II.C, nothing prevented Plaintiff from bringing his claims in the lengthy period between his release from carceral custody in September 2019 and his reincarceration in June 2020, a period which came *after* Plaintiff had demonstrated his knowledge of the injury suffered. *See* Third Am. Compl. ¶ 72(k).

9

More importantly, the date of accrual for Plaintiff's state law claims is dictated by New Mexico state law. Plaintiff cites to no New Mexico cases or statutes in support of the claim that false imprisonment under New Mexico state law should be understood as a continuing wrong for the purpose of calculating dates of accrual.

### F. The relation-back doctrine does not apply to Plaintiff's claims against CoreCivic

Plaintiff lastly invokes the "relation-back" doctrine, under which he posits that CoreCivic "should have known about the complaint[]" at the time it was filed, due to Plaintiff's Second Amended Complaint naming Defendant Judith Anderson. *See* ECF No. 105 at 17. Defendant Anderson worked for CoreCivic during Plaintiff's unlawful incarceration yet had mistakenly been identified in Plaintiff's Second Amended Complaint as an employee of the New Mexico Corrections Department. *See* ECF No. 16 at 1, ¶ 10.

Relation back is governed by Federal Rule of Civil Procedure 15(c)(1), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits; and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1).

Plaintiff correctly articulates the relevant test: "The question under Rule 15(c)(1)(C)(ii) is not whether [a plaintiff] knew or should have known the identity of [a misnamed party] as the proper defendant, but whether [that defendant] knew or should have known that it would have been named as a defendant but for an error." ECF No. 105 at 16 (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010)).

10

However, Plaintiff's argument that CoreCivic knew or should have known of his suit against Defendant Anderson is highly attenuated. Plaintiff's logic proceeds as follows: because CoreCivic contracts with NMCD and incarcerated Plaintiff during the relevant period of incarceration at issue, and because Defendant Anderson was the records custodian employed by CoreCivic during Plaintiff's time in a CoreCivic facility, "CoreCivic would have known that its employee was sued for her role in manipulating [Plaintiff]'s sentence." ECF No. 105 at 17.

As CoreCivic notes, however, Defendant Anderson was identified in Plaintiff's Second Amended Complaint as an NMCD employee, *see* ECF No. 16 at 1, ¶ 10; NMCD's attorneys entered an appearance on her behalf, *see* ECF No. 105 at 17; and at the time Plaintiff filed both his original Complaint (in November 2021, *see* ECF No. 1) and his Second Amended Complaint (in February 2022, *see* ECF No. 16), Defendant Anderson *was* an NMCD employee, having ceased working for CoreCivic in October 2021, *see* ECF No. 107 at 7. Thus, for the Court to conclude that CoreCivic knew or should have known of Plaintiff's allegations requires the assumption that CoreCivic is (1) actively tracking all litigation against its contracting partners, and (2) determining whether any of its former employees are implicated. This logical chain is too attenuated for the Court to find that the relation-back doctrine may be successfully invoked with regard to Plaintiff's claims against CoreCivic.

**G. Upon reconsideration, the statute of limitations for Plaintiff's claims against CoreCivic expired as of September 2022**

Plaintiff levels only New Mexico state law claims—specifically, for false imprisonment and negligence—against CoreCivic. ECF No. 61 at 28. The statute of limitations for such claims is three years.[6] At issue is when Plaintiff's claims began to accrue.

---

[6] *See* N.M. Stat. Ann. 1978, § 37-1-8.

The Court first adopts its previous findings as to when New Mexico state law claims for false imprisonment begin to accrue:

> As CoreCivic notes, New Mexico state courts have frequently applied the so-called "discovery rule" in determining the date of accrual for various personal injury torts. *See* ECF No. 64 at 5. That rule establishes that "the [accrual] time period begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." *Gerke v. Romero*, 237 P.3d 111, 115 (N.M. Ct. App. 2010) (holding that the "discovery" rule was applicable to instances of exposure to toxic substances and noting its applicability across various other tort fields to include medical malpractice, products liability, and professional negligence) . . . .
>
> [However, g]iven the dissimilarity between the tort of false imprisonment and those torts which have previously been found subject to the "discovery" rule, the Court cannot assume that the "discovery" rule applies in the false imprisonment context.
>
> Faced with a dearth of clear guidance [from the New Mexico Supreme Court], the Court looks to various analyses of the accrual issue conducted within the District of New Mexico. In numerous instances in this District, federal judges tasked with determining when the tort of false imprisonment may accrue under New Mexico state law have found that the statute of limitations for false imprisonment tort claims begins to run only as of the last date of wrongful detention or incarceration. *See, e.g.*, *Gose*[], 727 F. Supp. 2d [at] 1263-64 [] (finding that the New Mexico Supreme Court would likely "follow in the footsteps of the *Restatement (Second) of Torts*, which states that the statute of limitations begins to run from the time imprisonment ends"); *Smith v. Alamogordo Police Dep't*, No. 21-CV-1084 MV/SMV, 2022 WL 16834032, at *5 (D.N.M. Nov. 9, 2022), *report and recommendation adopted*, No. 21-CV-1084 MV/SMV, 2023 WL 142561 (D.N.M. Jan. 10, 2023) ("A false imprisonment claim accrues on the last day on which a plaintiff alleges he was falsely imprisoned."); *Maho v. Hankins*, No. CV 19-182 KK/SCY, 2019 WL 6781207, at *6 (D.N.M. Dec. 12, 2019) ("To determine when Plaintiff's state-law claims for false imprisonment and malicious abuse of process accrued, the Court looks to New Mexico law . . . . The Court predicts the New Mexico Supreme Court would rule that Plaintiff's claim for false imprisonment under the [New Mexico Tort Claims Act] accrued, at the latest, on the last date on which he alleges he was falsely imprisoned[.]").

ECF No. 82 at 8-9.

Within this framework, there is an obvious distinction between "the last date[s] on which [plaintiffs] allege[] [they are] falsely imprisoned" and the "last date" of incarceration in instances covering multiple periods of incarceration. While the date of Plaintiff's final release from carceral custody was October 28, 2020, see ECF No. 61 ¶ 92, the "last date" for the purposes of an individual claim must be understood as referring to the last date of a specific unit of incarceration by a specific defendant entity. It would be illogical to allow litigants alleging wrongful incarceration to reset the limitations clock upon each subsequent period of incarceration, no matter how long the gap between those periods *or* the identity of the parties responsible for a litigant's allegedly wrongful incarceration.

Applying the law to the facts as alleged, Plaintiff was released from CoreCivic's control in September 2019. *See* Third Am. Compl. ¶ 80. Nine months then elapsed between Plaintiff's release from CoreCivic's custody and his subsequent reincarceration in June 2020. *Id*. ¶ 87. Finally, when Plaintiff was reincarcerated, he was incarcerated by the State of New Mexico, not CoreCivic. *Id*. ¶ 92.

The Court here need not draw a finite line as to when a period of reincarceration might be so close to a previous stint of incarceration as to render the filing of a lawsuit impossible. It can, however, safely say that such a line falls well within the nine-month period that Plaintiff spent outside of carceral custody between September 2019 and June 2020.

Given that Plaintiff was released from CoreCivic's custody *and all carceral custody* in September 2019, the Court finds that his claims against CoreCivic began to accrue as of that date. Accordingly, when CoreCivic was first named as a Defendant in June 2023, the statute of

limitations for Plaintiff's claims against it had expired. Plaintiff's claims against CoreCivic are thus **DISMISSED WITH PREJUDICE.**[7]

### H. Certification to the New Mexico Supreme Court is unnecessary

In his Response to CoreCivic's Motion for Reconsideration, Plaintiff also moves this Court to certify the question of when claims for false imprisonment begin to accrue under state law to the New Mexico Supreme Court. *See* ECF No. 105 at 19. CoreCivic's Reply argues that (1) this request is procedurally improper, due to Plaintiff's failure to comply with this District's Local Rule 7.1, and (2) runs directly counter to Plaintiff's opposing such a move in the context of CoreCivic's Motion for Certification. *See* ECF No. 107 at 9.

As to CoreCivic's first point, the Court urges Plaintiff's counsel to heed this District's Local Rules. Nevertheless, the Court declines to invoke the relatively harsh sanction of summarily denying Plaintiff's request. *See* D.N.M.LR-Civ. 7.1(a) ("[A] motion that omits recitation of a good-faith request for concurrence *may* be summarily denied") (emphasis added).

As to Defendant's second point, this Court notes that Plaintiff is well within his rights to seek review when faced with the prospect of an unfavorable outcome—namely, that this Court reconsider its prior Order—and to oppose such review in the wake of a desirable result, such as this Court's denial of CoreCivic's Motion to Dismiss.

However, the Court nevertheless finds that certification of this question to the New Mexico Supreme Court would be improper. It is well-established that a decision to certify is within the Court's discretion. *Hartford Ins. Co. of the Midwest v. Cline*, 427 F.3d 715, 716-17 (10th Cir. 2005). Further, "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.

---

[7] A dismissal based on the expiration of the statute of limitations is treated as a dismissal with prejudice. *Rodriguez v. Colorado*, 521 F. App'x 670, 671 (10th Cir. 2013).

1988). Rather, courts should decline to certify a question when there is a "reasonably clear and principled course" to follow. *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

The Court believes that such a reasonably clear and principled course exists here: the statute of limitations for Plaintiff's claims against CoreCivic began to accrue upon his release from custody in September 2019. At that time, Plaintiff was no longer incarcerated, satisfying the false imprisonment accrual rule as it has long been articulated by various judges of this Court. And while the Court here declines to find that the discovery rule is necessarily applicable to Plaintiff's claims, the outcome of any such finding is irrelevant: Plaintiff objectively knew of his claims for the purposes of New Mexico's discovery rule at the time of his release from CoreCivic's custody in September 2019. Further, Plaintiff was not prevented from litigating his state claims against CoreCivic pursuant to *Heck v. Humphrey*. And while Plaintiff was reincarcerated by the state in June 2020, his reincarceration by a separate entity had no bearing on the limitations clock against CoreCivic, whose custodial control over Plaintiff ended some nine months prior.

Given the above, the Court declines to certify the accrual question to the Supreme Court of New Mexico.

### III.   CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED** that:

1. Defendant CoreCivic, Inc.'s Motion to Reconsider, ECF No. 104, is **GRANTED**;

2. Defendant CoreCivic, Inc.'s Motion for Certification, ECF No. 89, is **DENIED AS MOOT**, and;

3. Plaintiff's claims against CoreCivic are **DISMISSED WITH PREJUDICE**.

*Margaret Strickland*

                                                                               **MARGARET STRICKLAND**
                                                                               UNITED STATES DISTRICT JUDGE